IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Rowanda Denise Fralix, | ) | C/A No. 0:13-1211-TMC-PJG |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security,[1] | ) | |
| Defendant. | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Rowanda Denise Fralix ("Fralix"), brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be affirmed.

### ADMINISTRATIVE PROCEEDINGS

In December 2009, Fralix applied for SSI. Fralix's application was denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 7, 2011 at which Fralix appeared and testified and was represented by Beatrice Whitten, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision on October 26, 2011 finding that Fralix was not disabled. (Tr. 8-15.)

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



Fralix was born in 1965 and was forty-four years old on the date her application was filed. (Tr. 117.) She has a high school education and no past relevant work experience. (Tr. 31.) Fralix alleges disability due to a back injury, pinched nerve, diabetes, arthritis, and headache. (Tr. 160.)

The ALJ made the following findings and conclusions:

1. The claimant has not engaged in substantial gainful activity since December 8, 2009, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairment: back disorder (20 CFR 416.920(c)).

    \*   \*   \*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

    \*   \*   \*

4. . . . [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that the claimant needs to option to sit or stand at will; would not be off-task for more than ten percent of the work period; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, stoop, balance, kneel, crouch, and crawl; can frequently reach overhead; and must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery.

    \*   \*   \*

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born . . . [in] 1965 and was 44 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

    \*   \*   \*

> 10. The claimant has not been under a disability, as defined in the Social Security Act, since December 8, 2009, the date the application was filed (20 CFR 416.920(g)).

(Tr. 10-15.)

Fralix filed a request for Appeals Council review which was denied on March 13, 2013, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

> (1) whether the claimant is engaged in substantial gainful activity;
>
> (2) whether the claimant has a "severe" impairment;
>
> (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;
>
> (4) whether the claimant can perform her past relevant work; and
>
> (5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 416.920(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 416.920(h).



than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig</u>, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." <u>Id.</u> Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. <u>Blalock</u>, 483 F.2d at 775.

## ISSUES

Fralix raises the following issues for this judicial review:

I.  The ALJ made erroneous credibility findings not based upon substantial evidence.

II. The ALJ made an erroneous RFC analysis.

(Pl.'s Br., ECF No. 22.)

## DISCUSSION

**A.  Fralix's Subjective Complaints**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter only the second step is at issue,[3] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." <u>Id.</u> In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make

---

[3] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." <u>Craig</u>, 76 F.3d at 594 (internal quotation omitted).



clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

> (i)    Your daily activities;
> (ii)   The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii)  Precipitating and aggravating factors;
> (iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi)   Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

In this case the ALJ observed that at the hearing, Fralix testified that

> she injured her back while working and underwent surgery. However, she reported continuing back pain, leg pain, leg spasms, arm weakness, and daily headaches. She reported incontinence associated with one of her back surgeries. She said that she



has tried physical therapy and pain management, but they were not effective. She said that she has not been able to afford treatment or get to a free clinic early enough, so she takes over-the-counter pain medications, which she reported are ineffective. The claimant testified that her pain limits her ability to stand and walk. She said that she cannot walk more than three minutes at a time. She explained that she walks sideways. She said that she can only sit comfortably for 30 minutes. The claimant said that she tries to do household chores, but she is unable to do them every day. She said that she spends most of her time sitting around with her four year old grandson.

(Tr. 11-12.) The ALJ found that Fralix's "statements concerning the intensity, persistence and limiting effects of [some of her alleged] symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment."[4] (Tr. 12.) In reaching this conclusion, the ALJ found that although Fralix's back disorder represented a severe impairment, it did not preclude work activity within the residual functional capacity noted above. Specifically, the ALJ found that the treatment notes revealed that after Fralix injured her back, she underwent surgery several years prior to the alleged onset date, in 2003 and 2005. The ALJ determined that "[o]verall, there has been little treatment and objective findings have been essentially mild," observing reports in May 2006 that medications helped and that Fralix had only been to one therapy session; and that a lumbar MRI in September 2006 "showed postsurgical changes at L5-S1 with no evidence of significant residual or recurrent disc disease at any level." (Tr. 12.) The ALJ observed that a consultative examination in February 2009 indicated that Fralix "exhibited decreased cervical and lumbar range of motion as well as upper and lower extremity weakness," for which the ALJ limited Fralix to sedentary work without reaching. (Id.) The ALJ found that the results from an April 2009

---

[4] As stated above, the ALJ determined that Fralix retained "the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that the claimant needs to option to sit or stand at will; would not be off-task for more than ten percent of the work period; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, stoop, balance, kneel, crouch, and crawl; can frequently reach overhead; and must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery." (Tr. 11.)



lumbar x-ray were consistent with the results from the September 2006 MRI. The ALJ also observed that Fralix's February 2010 consultative examination revealed that "the claimant exhibited normal range of motion in the cervical, thoracic, and lumbar spine and all extremities. However, she had some generalized lumbar tenderness. This examiner noted no weakness, and the claimant's musculoskeletal examination was essentially normal." (Id.) The ALJ noted that the results of the February 2010 consultative examination showed improvement from the February 2009 consultative examination, but as stated above limited Fralix's residual functional capacity in consideration of the findings from the first examination and giving Fralix the benefit of the doubt. The ALJ further observed that a March 2010 x-ray of the thoracic spine was negative, and found that "[a]s a whole, it appears that the claimant's back improved after surgery, and there are only mild residual effects, which have been accommodated in the residual functional capacity assessment." (Id.)

In summary, the ALJ found that the record does not support the severity of Fralix's allegations, and further found the following:

> She has reported that she uses a cane, but she appeared at a February 2009 consultative examination without a cane and was able to heel, toe, and tandem walk well (Exhibit 4F). There is no indication that she was prescribed a cane, and there is no evidence that an assistive device is medically necessary. In February 2010, the consultative examiner observed normal gait. He noted that the claimant did not appear to have any limitation of motion of her spine or extremities and was able to walk without a limp or instability (Exhibit 7F).
>
> Overall, the claimant has not had much treatment for her back. In May 2006, she had only been to physical therapy once (Exhibit 1F). At a February 2009 consultative examination, the claimant reported that she had not taken any pain medication in two years (Exhibit 4F). She has not seen an orthopaedist since the alleged onset date. However, she has presented to the hospital for back pain once since the onset date (Exhibit 8F).
>
> Although the claimant has attributed her lack of treatment to lack of insurance, she has not pursued low-cost or free medical treatment. She testified that this is because she is unable to get to a free clinic early enough to receive treatment. I do not accept this excuse for her lack of treatment. The claimant testified that she lives with



> relatives, who could presumably help the claimant go to a free clinic since she does not drive. Furthermore, there is no indication that the claimant would be unable to use public transportation to get to a free clinic. Her failure to arrive at a clinic in a timely fashion does not appear related to her medical condition. The claimant testified that she does not work and has very few responsibilities at home, which suggests that there is nothing precluding her from going to a clinic prior to close. Accordingly, the claimant's lack of treatment has a negative impact on her claim for disability because she has failed to provide a reasonable explanation for her failure to seek treatment. Moreover, the claimant has rarely visited the emergency department, where she would be entitled to treatment regardless of her lack of insurance. Her failure to seek emergency treatment regularly is inconsistent with her allegation of such severe pain.
>
> The claimant's work history is weak and suggests that she did not work consistently or in a manner reasonably approaching maximum potential. In sum, her work record indicates that, even before she became disabled, by her own definition, she did not work consistently. Further, she did not work at all for several years. Such a history does not help the claimant's credibility when she alleged, as she does now, that she cannot work at all.

(Tr. 12-13.)

Fralix challenges some of the reasons offered by the ALJ to discount her credibility. Fralix appears to argue that the ALJ improperly discounted her credibility for failure to pursue regular medical treatment in light of Fralix's testimony regarding her inability to afford such treatment. In support of this position, Fralix further argues that the ALJ based his discussion on this point to presumptions and assumptions that are not within the record, directing her argument to the ALJ's finding that her relatives could transport her, that free clinics and public transport existed that could assist her, and that she failed to visit emergency rooms more than once. She also argues that the ALJ misstated the facts by finding that she only had two back surgeries, in 2003 and 2005, and by finding that she had little treatment and mild objective findings, relying in part on a September 2006 MRI showing "no evidence of significant residual or recurrent disc disease at any level." (Tr. 12.) Fralix points out that she had a third back surgery in 2007, and argues that it shows that her "treating physicians did not agree with the ALJ's medical opinion that her 2006 MRI failed to demonstrate



compelling evidence of spinal problems which were causing her symptoms" and that these surgeries are not accurately described as little treatment in response to mild objective findings. Fralix also appears to argue that the ALJ should have questioned Fralix as to a possible reason for her lack of work history. Fralix challenges the ALJ's finding that Fralix improved between consultative examinations, pointing to Fralix's consistent complaints to each examiner. Finally, Fralix questions how the thoracic x-ray impacts her credibility.

Upon review of the records as a whole and the parties' briefs, the court finds that Fralix has failed to demonstrate that the ALJ's determination that Fralix was not entirely credible is unsupported. As stated above, it the ALJ's duty to weigh credibility and the court finds that ALJ's conclusion comfortably within the bounds of substantial evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Notwithstanding the ALJ's failure to mention the January 2007 fusion surgery, it does not render the ALJ's findings and conclusions unsupported. As pointed out by the Commissioner, Fralix's surgery in January 2007 was almost two years prior to her alleged onset date of December 2008. With regard to the ALJ's determination that Fralix has failed to provide a reasonable explanation for her failure to seek treatment, the court finds that even if Fralix could offer additional reasons in an attempt to undercut the ALJ's rationale, it does not render the ALJ's credibility analysis unsupported in light of the many other reasons the ALJ provided for discounting Fralix's credibility. Finally, even though Fralix's complaints may have been consistent in both consultive examinations, the examiners' findings differed. Specifically, the findings of the second consultative examiner support the ALJ's findings of improvement. Moreover, despite the improved findings, the ALJ gave Fralix "the benefit of the doubt" and included more restrictive functional limitations.



Accordingly, even if the court were to agree with Fralix on some of her challenges to the ALJ's analysis, such as the ALJ's failure to mention her surgery in 2007, the court finds that Fralix has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law.  See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Mickle v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

**B.     Residual Functional Capacity**

Next, Fralix argues that the ALJ erred in failing to consider and include additional limitations in her residual functional capacity.  Specifically, Fralix argues that the ALJ should have considered and included limitations to account for Fralix being off task due to pain and missing two days or more of work per month.  The vocational expert testified that with either of these additional limitations, there would not be any jobs in the national economy that Fralix could perform. (Tr. 38.)

A claimant's residual functional capacity is the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record.  20 C.F.R. § 416.945(a)(1).  In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence."  See 20 C.F.R. § 416.945(a)(3).  Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC.



Although Fralix argues that the ALJ had a duty to explain why these specific limitations—which were inconsistent with his residual functional capacity assessment—were rejected, the court disagrees. As discussed above, the court finds that Fralix failed to demonstrate that the ALJ's credibility analysis is unsupported by substantial evidence. Moreover, in determining Fralix's residual functional capacity, the ALJ specifically referenced the opinions of the state agency medical consultants, to which he gave significant weight as either consistent with the weight of the evidence of record or consistent with the record as a whole. (Tr. 13.) Further, the ALJ repeatedly explained his rationale for imposing additional limitations as a result of the conflicting reports by the consultative examiners. Based on the foregoing, the court finds that remand is not warranted on this issue.

## RECOMMENDATION

For the foregoing reasons, the court finds that Fralix has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 17, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).